# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0091-21

IN THE MATTER OF THE
CIVIL COMMITMENT OF
F.A.

_____

Submitted May 17, 2022 – Decided July 8, 2022

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. SVP-685-13.

Joseph E. Krakora, Public Defender, attorney for appellant F.A. (Phuong V. Dao, Designated Counsel, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

Appellant appeals from the trial court's July 26, 2021 order continuing his

civil commitment to the State of New Jersey Special Treatment Unit (STU)—

the facility designated for the custody, care, and treatment of sexually violent

predators. Because the trial judge did not err in continuing the commitment, we affirm.

Appellant was convicted of first-degree aggravated sexual assault in 1983 and sentenced to a fifteen-year term of incarceration. In 1988, while under parole supervision, appellant was indicted on new charges. He was convicted in 1990 of third-degree sexual assault and another charge. The court sentenced appellant to ten years on the sexual assault count with a five-year period of parole ineligibility, to run consecutively with the prior 1983 sentence.

In 2010, appellant was charged with second-degree sexual assault and third-degree endangering the welfare of a child. He pleaded guilty to the endangering charge and was sentenced to five years in prison with parole supervision for life.

In 2013, the State petitioned to civilly commit appellant pursuant to the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. The court granted the petition in 2014 and appellant was committed to the STU where he currently remains. Appellant was fifty-seven years old at the time of the July 2021 annual review hearing.

A-0091-21

At the 2021 hearing, the State presented Howard Gilman, M.D., a psychiatrist, and Christine Zavalis, Psy.D., a psychologist, as experts. Christopher Lorah, Ph.D., testified as a psychologist for appellant.

Dr. Gilman was accepted by the court as an expert in the field of psychiatry and in performing evaluations and risk assessments under the SVPA. He concluded that appellant had not mitigated his risk to sexually re-offend in the foreseeable future.

Dr. Gilman described for the court the details of appellant's sexual offense history, commencing when he was nineteen years old in 1982 when he forced a woman to engage in sexual activity with him. In 1988, appellant sexually assaulted the mother of his children. He was charged in 2009 with sexual assault of a three-year-old girl and with endangering the welfare of a child. Dr. Gilman testified that the 2009 events had "sexual overtones in the commission of that offense" as it was "ultimately a sexual act." Dr. Gilman did concede that the events surrounding that incident were unclear, but it appeared that appellant was sexually aroused and masturbating near his stepsister's three-year-old daughter. Dr. Gilman noted another doctor's progress reports which stated appellant admitted to having fantasies about the child.

A-0091-21

Dr. Gilman's review of appellant's criminal history led him to several conclusions. He found that appellant has a "history of repetitive sexual[ly] violent behavior" and "problems with impulsivity." Dr. Gilman also noted appellant's second sexual offense occurred while he was on parole and within eighteen months from being released from prison on his first sexual offense. Appellant was charged with his third sexual offense four months after he was released from prison for the prior offense. The expert testified that this pattern reflects that appellant is "sexually disinhibited" and sexually violent. Moreover, Dr. Gilman stated the "fair amount of versatility" regarding his victims is concerning, as appellant has targeted both children and adults.

Dr. Gilman also opined that appellant's risk to sexually re-offend is high and that it is difficult to predict how he will re-offend because there is no discernable pattern as to appellant's victims. Additionally, incarceration and all other constraints have not changed appellant's behavior, and he has not meaningfully engaged in treatment at the STU to reduce his risk of re-offending.

Dr. Gilman also referred to appellant's long history of substance abuse, including alcohol and drugs. He stated that the substance abuse contributed to the commission of the sexually violent offenses. The expert also testified that appellant's risk for substance abuse relapse is high if released from the STU.

4

As to appellant's treatment progress, Dr. Gilman testified that appellant has not done well and his level of treatment engagement is poor. Appellant has not moved beyond pre-treatment phases one and two and has consistently refused treatment. In addition, appellant was disciplined in 2020 for bringing in contraband to the facility and making a threatening call to a resident in the program. Although appellant attended group sessions in 2017 and 2018, he was often unprepared and had not successfully completed any of the core sexual offender treatment modules other than the substance abuse module. In 2019, appellant regressed in treatment to phase one and put himself on treatment refusal status, where he remained at the time of the commitment hearing.

Dr. Gilman testified that appellant's behavior in the STU indicates he has difficulty with authority and following rules and is unwilling to adapt to treatment. Appellant also has issues working with others, is self-centered and has difficulty accepting treatment because he believes "he knows better." Moreover, appellant lacks empathy and disregards the welfare of others.

Dr. Gilman diagnosed appellant with "specified personality disorder with antisocial and dependent features." And, based on several psychological tests, the expert testified that appellant scored above average as to re-offense risk and

5

is "just shy of" meeting the criteria for psychopathy.[1] Thus, Dr. Gilman concluded that appellant is at a high risk to re-offend if he did not remain civilly committed.

During the hearing, Dr. Zavalis testified as an expert in the field of psychology with a concentration in risk assessments for sexually violent predators committed under the SVPA. As a member of STU's Treatment Progress Review Committee (TPRC), Dr. Zavalis monitored, reviewed, and recorded appellant's treatment progress.

Dr. Zavalis informed the court that appellant refused to participate in the TPRC interview. Nevertheless, she was able to prepare a report based on appellant's treatment chart and information from his treatment providers.

Dr. Zavalis recommended appellant remain in treatment level phase one because he refused to participate in treatment and was currently in a modified activities placement because of the contraband and physical altercation incidents.

The expert testified that appellant was on treatment refusal status and was not motivated to address any problem areas, including his sexual offense history

---

[1] Dr. Gilman also noted appellant's scores for psychopathy were higher than average as compared to the general incarcerated population.

A-0091-21

and substance abuse issues. Dr. Zavalis testified that appellant's progress notes reflect his unwillingness to work on a self-study or any of his assignments or assessments. Dr. Zavalis interpreted this behavior to indicate that appellant is not responding to the STU intervention and services. In addition, appellant's treatment team disclosed to Dr. Zavalis that appellant was "easily dysregulated," has "general negative emotionality," and does not understand the sexual assault cycle nor has he applied treatment concepts to his behavior. These issues were further exacerbated by appellant's hostility towards treatment. Dr. Zavalis explained to the court that appellant continues to "regress[] back to old behaviors and thought process[es]" and has failed to maintain any positive progression in his treatment. Appellant consistently told his treatment providers that he did not wish to work on any treatment goals. According to Dr. Zavalis, appellant's behavior indicates that he is not willing to engage in treatment nor has he benefited from treatment enough to mitigate his risk to sexually re-offend in the future and, therefore, he remains at "high risk" for re-offending.

Dr. Zavalis diagnosed appellant with antisocial personality disorder and a "provisional diagnosis of other specified paraphilic disorder with the specifier of non-consent," as well as alcohol, cannabis, and cocaine use disorders. The combination of appellant's antisocial personality disorder and substance abuse,

A-0091-21

Dr. Zavalis testified, is "incredibly significant" and is "directly related" to his willingness and propensity to act on sexual urges in a criminal manner. And because appellant refused to cooperate with treatment while in the STU, he remained unable to control his impulses.

Dr. Christopher Lorah testified on behalf of appellant. He was admitted as an expert in the field of psychology with a specialization in performing evaluations and assessments as to an individual's risk under the SVPA. Dr. Lorah reviewed appellant's records and interviewed him in 2019 and 2020.

Dr. Lorah diagnosed appellant with adult antisocial behavior as well as alcohol, cocaine, and cannabis use disorders. Dr. Lorah testified that he did not find any evidence of paraphilic or pedophilic disorders. Therefore, Dr. Lorah disagreed with the other experts and did not find evidence that appellant "suffers from a mental health abnormality or personality disorder that predisposes him to commit acts of sexual violence."

Dr. Lorah generally agreed with the State's experts that appellant has not done well in treatment. However, he testified that appellant's failure to engage in treatment and lack of motivation does not raise appellant's risk to re-offend. Dr. Lorah thought a "step-down" plan would be appropriate in which appellant would be subject to a discharge plan and community supervision for life. He

A-0091-21

stated that if appellant was subject to frequent alcohol testing and GPS monitoring, his risk to sexually re-offend or commit an act of sexual violence would be reduced below the statutory requirement of the SVPA.

Judge Bradford M. Bury issued a comprehensive, well-reasoned, oral decision on July 22 and 24, 2021. After reviewing the experts' testimony and reports, the judge found appellant "suffer[ed] from a mental abnormality or personality disorder that affects him emotionally, cognitively, or volitionally to such a degree that he is predisposed to commit acts of sexual violence." The judge stated further: "If released, [appellant] would have serious difficulty controlling his sexually violent behavior to such degree that he would be highly likely within the reasonably foreseeable future to engage in acts of sexual violence."

In considering the experts' testimony, Judge Bury found Dr. Gilman was a "highly credible witness." The judge noted Dr. Gilman's testimony that appellant had not mitigated his risk to sexually re-offend, especially because incarceration did not change his behavior. In addition, it was difficult to predict the next target of appellant's acts of sexual violence given the "versatility" of the previous victims. The court noted appellant had not taken advantage of the treatment offered to him. In fact, during his time in the STU, appellant had

never progressed beyond phase two—which is significantly below the five phases of treatment that residents participate in prior to being discharged into the community. And appellant has refused any treatment since December 2018. The court also relied on Dr. Gilman's conclusion that appellant would be at a high risk for relapse of his substance abuse issues if released back into the community.

Judge Bury also found Dr. Zavalis to be a highly credible witness. The judge found it "significant" that appellant declined to be interviewed by the expert and stated that it "symbolizes and reiterates the finding of [appellant] being resistant to treatment and being in a treatment refusal status and/or moderately and inconsistently at best engaging in . . . treatment." The court also relied on Dr. Zavalis's opinion in which she stated that appellant's antisocial personality disorder is the "predisposing condition" that makes it more likely that he will re-offend sexually, and appellant's substance abuse also contributes to his high-risk to re-offend.

In turning to Dr. Lorah's testimony and opinions, the judge found the witness not "credible in the least." Judge Bury stated that Dr. Lorah missed the "important piece" contributing to appellant's risk to re-offend—namely that appellant is unable and unwilling to "meaningfully engage in treatment." The

A-0091-21

court was troubled by Dr. Lorah's testimony in which he appeared to blame appellant's treatment providers for appellant's lack of basic motivation to act consistently and meaningfully in his treatment. The court reiterated that appellant's lack of motivation in his treatment plan and failure to understand his sexual offense cycle made relapse more likely and is a "recipe for disaster" for the community. The court also rejected Dr. Lorah's recommendation to release appellant to "see what happens," a suggestion the court found was "not rational" and presented a great risk to the community. Judge Bury also questioned a study Dr. Lorah cited in his testimony which suggests outpatient sexual offender treatment is as effective as inpatient sexual offender treatment. The court found Dr. Lorah did not know the facts and analysis of the report. Therefore, the expert's opinion on the subject was a net opinion.

On July 26, 2021, the court entered an order directing appellant's continued commitment in the STU.

When reviewing a trial court's commitment determination, our standard of review is "extremely narrow and should be modified only if the record reveals a clear mistake." In re D.C., 146 N.J. 31, 58 (1996). We will only inquire whether there was significant expert testimony in the record and whether the trial court's findings emanating from that testimony were clearly erroneous. Id. at 58-59.

A-0091-21

Our standard of review is highly deferential because the trial judges presiding over civil commitment hearings have the opportunity to get a "feel" of the case and opportunity to see and hear witnesses—a privilege the reviewing court does not enjoy.  In re Civ. Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  Thus, "an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'"  Id. at 175 (quoting In re D.C., 146 N.J. at 58).  Further, the judges who hear civil commitment cases are "specialists" whose expertise is entitled to "special deference."  Id. at 174.

On appeal, appellant contends the trial court erred in accepting Dr. Gilman's and Zavalis's opinions that he remains at a high risk of sexual re-offense and requires continued civil commitment.  We disagree and affirm substantially for the reasons expressed in Judge Bury's cogent decision.

Once an individual has been committed under the SVPA, the trial court is required to conduct an annual review hearing to determine whether the committed individual should be released or remain in the designated treatment facility for continued treatment.  N.J.S.A. 30:4-27.35.  The burden remains with the State to prove by clear and convincing evidence that the individual continues to be a sexually violent predator.  N.J.S.A. 30:4-27.32.  The individual will only

A-0091-21

be released when the trial court is "convinced that he or she will not have serious difficulty controlling sexually violent behavior and will be highly likely to comply with the plan for safe reintegration into the community." In re Commitment of W.Z., 173 N.J. 109, 130 (2002).

We discern no reason to disturb Judge Bury's decision. He considered the experts' testimony and their respective reports. The judge accepted the opinions of Drs. Gilman and Zavalis after finding the doctors to be highly credible witnesses. Those experts diagnosed appellant with a personality disorder.

The judge also concluded that appellant's personality disorders made him likely to engage in acts of sexual violence in the foreseeable future if not confined. Appellant was on treatment refusal status and had been unwilling to engage in treatment for several years before the hearing. Therefore, he had not mitigated his risk to re-offend. Appellant's substance abuse disorder also contributed to his high risk of re-offense. The record does not reflect a "clear mistake," and the judge's decision to continue commitment is supported by the sufficient credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0091-21